IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DOMINIC M. GAITO, ET AL.,      :      CONSOLIDATED UNDER
                               :      MDL 875
     Plaintiffs,               :
                               :
                               :
     v.                        :
                               :
A-C PRODUCT LIABILITY TRUST,   :      E.D. PA CIVIL ACTION NO.
ET AL.,                        :      2:11-30281-ER
                               :
     Defendants.               :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          September 28, 2015

        This case was transferred in January 2011 from the

United State District Court for the Northern District of Ohio to

the United States District Court for the Eastern District of

Pennsylvania, where it became part of the consolidated asbestos

products liability multidistrict litigation (MDL 875). The case

was assigned to the Court's maritime docket ("MARDOC").

        Willard E. Bartel and David E. Peebles ("Plaintiffs"),

Administrators of the Estate of Dominic Gaito, allege that Mr.

Gaito ("Decedent" or "Mr. Gaito") was exposed to asbestos while

working aboard various ships. Plaintiffs assert that Decedent

developed an asbestos-related illness as a result of his

exposure to asbestos aboard those ships.

        For the reasons that follow, the Court will deny

Defendants' motion.

I.   **BACKGROUND**

On September 5 1995, Mr. Gaito brought claims for non-malignant asbestos-related disease (now pursued by Plaintiffs after the death of Mr. Gaito) against various defendants, including shipowners represented by Thompson Hine LLP ("Defendants" or the "Thompson Hine Shipowners"). Less than three weeks earlier, on August 16, 1995, Mr. Gaito had filed for bankruptcy pursuant to Chapter 7 of the bankruptcy code, without listing his asbestos claims as an asset in the bankruptcy filing (the "First Bankruptcy"). The First Bankruptcy action was closed shortly thereafter, on March 15, 1996. By way of Order dated May 2, 1996, Judge Charles Weiner[1] dismissed those claims administratively, leaving open the possibility for the action to be pursued at a later, unspecified date.[2] Approximately five

---

[1]     Judge Weiner presided over MDL 875 from its inception in 1991 until his passing in 2005. In 2005, Judge James Giles was designated to preside over MDL 875, where he remained until his resignation from the bench in 2008. In October 2008, Judge Eduardo Robreno, the undersigned, was appointed to succeed Judge Giles, and he has presided over MDL 875 since that date.

[2]     On May 2, 1996, Judge Weiner administratively dismissed all pending MARDOC claims without prejudice, noting that the claimants had "provide[d] no real medical or exposure history," and had been unable to do so for months. In re Asbestos Prods. Liab. Litig. (No. VI), No. 2 MDL 875, 1996 WL 239863, at *1-2 (E.D. Pa. May 2, 1996). Judge Weiner also ordered that these "asymptomatic cases" could be activated if the plaintiffs began to suffer from an impairment and could show (1) "satisfactory evidence [of] an asbestos-related personal injury compensable under the law," and (2) "probative evidence of exposure" to a defendant's products. Id. at *5. On March 14,

years later, on September 20, 2001, Mr. Gaito again filed for
bankruptcy pursuant to Chapter 7 of the bankruptcy code, again
without listing his asbestos claims as an asset in that
bankruptcy filing (the "Second Bankruptcy"). The Second
Bankruptcy action was closed January 31, 2002. During the Second
Bankruptcy, on December 4, 2001, Mr. Gaito was diagnosed with
lung cancer, giving rise to claims for a malignant asbestos-
related disease. On January 24, 2011, the MDL Court reinstated
the asbestos action (now being pursued by Plaintiff), which had
been dismissed by Judge Weiner in 1996. A summary of this
timeline of events is as follows:

- August 16, 1995 – First Bankruptcy action filed
- September 5, 1995 - Asbestos action filed
  (non-malignancy claims)
- March 15, 1996 – First Bankruptcy action closed
- May 1996 - Asbestos action administratively dismissed
- September 20, 2001 – Second Bankruptcy action filed
- December 4, 2001 - Cancer diagnosis (malignancy claims)
- January 31, 2002 – Second Bankruptcy action closed
- January 2011 - Asbestos action reinstated by MDL Court

---

1997, Judge Weiner applied that dismissal order to all future
MARDOC cases that had not yet been filed. In 2002, the MDL Court
ordered that administratively dismissed cases remain active for
certain purposes (e.g., entertaining settlement motions and
orders, motions for amendment to the pleadings, etc.), and in
2003, clarified that the administrative dismissals were "not
intended to provide a basis for excluding the MARDOC claimants
from participating in settlement programs or prepackaged
bankruptcy programs[.]" In re Am. Capital Equip., 296 Fed. App'x
270, 272 (3d Cir. 2008) (quoting In re Asbestos Prods. Liab.
Litig. (No. VI), Order Granting Relief to MARDOC Claimants with
Regard to Combustion Eng'g, Inc., No. 2 MDL 875 (E.D. Pa. Feb.
19, 2003)).

The Thompson Hine Shipowners have moved for summary judgment, arguing that (1) Plaintiff's claims are barred by way of judicial estoppel because Plaintiff failed to disclose the asbestos action as an asset in his bankruptcy filings, and (2) Plaintiff does not have standing to pursue the asbestos action because it is now owned by one (or both) of the bankruptcy estates.

## II.   LEGAL STANDARD

### A.   Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

B.   The Applicable Law

The parties appear to assume that Defendants' legal arguments regarding "judicial estoppel" and the "real party in interest" are matters of federal law that should be decided in the first instance by the Court. The Court agrees with this approach. See Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996).[3] In matters of federal law, the MDL transferee court applies the law of the circuit where it

---

[3]        "A federal court's ability to protect itself from manipulation by litigants should not vary according to the law of the state in which the underlying dispute arose." Ryan Operations, 81 F.3d at 358 n.2.

sits, which in this case is the law of the U.S. Court of Appeals for the Third Circuit. <u>Various Plaintiffs v. Various Defendants ("Oil Field Cases")</u>, 673 F. Supp. 2d 358, 362–63 (E.D. Pa. 2009) (Robreno, J.). Therefore, the Court will apply Third Circuit law in deciding the issues raised by Defendants' motion.

## III. THE PARTIES' ARGUMENTS

### A.   <u>Judicial Estoppel</u>

Defendants contend that all of Plaintiff's claims are barred on grounds of judicial estoppel. Specifically, they contend that Mr. Gaito took irreconcilably inconsistent positions in his bankruptcy proceedings and the instant proceeding. Defendants state that Mr. Gaito concealed the existence of his asbestos claims when filing for bankruptcy (both times) by not reporting them as pending or likely claims on Schedule B ("Personal Property"), while simultaneously asserting such claims in the current asbestos action (which was filed only three weeks after the filing of the bankruptcy action). They further assert that a finding of bad faith is warranted because Mr. Gaito had knowledge of the asbestos claims each time that he filed for bankruptcy and had a motive to conceal the claims from the Bankruptcy Court (i.e., to keep any proceeds of the claims while reducing the amount of assets available for distribution amongst the creditors – a motive

Defendants assert is common to nearly all debtors in bankruptcy).[4]

Finally, Defendants contend that no lesser remedy is warranted because the sanction of barring the non-malignancy asbestos claims is necessary to (1) keep Plaintiffs from profiting from the omission and (2) preserve the integrity of the bankruptcy proceedings.

Without clearly distinguishing between his non-malignancy claims and his malignancy claims – and without explicitly acknowledging that there were two separate bankruptcy actions pending during the course of Mr. Gaito's asbestos action – Plaintiffs contend that the asbestos claims are not barred on grounds of judicial estoppel. First, Plaintiffs contend that Mr. Gaito did not take inconsistent positions between his bankruptcy filing and the present asbestos action because his lung cancer

---

[4]      In particular, Defendants assert that, even with respect to the First Bankruptcy, there is evidence of bad faith because, given that the asbestos action was filed less than three weeks after the First Bankruptcy action was filed (and while it was still pending), Mr. Gaito must have been aware of his asbestos claims before the First Bankruptcy was closed, as he must have been in communications with his asbestos counsel about various matters, including his sailing history (for preparation of Initial Data Forms), other information for preparation of his (and other of his counsel's clients') asbestos lawsuits, and the submission of (and possibly receipt of payments from) asbestos bankruptcy trusts. However, Defendants do not cite to any piece of evidence in the record that indicates Mr. Gaito was in communication with this asbestos counsel prior to filing the First Bankruptcy.

diagnosis was not made (and, therefore, his lung cancer claims did not arise) until after his bankruptcy action had been closed, such that he was not required to list these claims as assets in his bankruptcy action. Moreover, Plaintiffs argue that even if Mr. Gaito should have identified the asbestos claims, the failure to do so was a good faith mistake such that judicial estoppel is not warranted.

Second, Plaintiffs assert that Defendants bear the burden of establishing bad faith, but have no evidence that Plaintiff acted in bad faith when he did not list his asbestos claims as an asset in his bankruptcy filing.

B.   <u>Real Party in Interest/Standing</u>

1.   <u>All Claims (Non-Malignant and Malignant Claims)</u>

In the alternative, Defendants contend that Plaintiffs have no right to pursue the claims (either the non-malignancy claims or the malignancy claims) because the claims no longer belong to Plaintiffs and instead belong to the bankruptcy trustee. Specifically, Defendants argue that, even though Mr. Gaito did not report these asbestos claims as assets in the bankruptcy filings, as required by 11 U.S.C. § 541(a)(1), those claims automatically became part of the corresponding bankruptcy estate(s) when the bankruptcy petitions were filed. As a result,

they assert that only the bankruptcy trustees can administer the claims.

Defendants also argue that, because Mr. Gaito did not reveal any of the asbestos claims, such that they were never properly scheduled as assets in either of the bankruptcy actions, the trustees were incapable of passing those claims back to Mr. Gaito through abandonment of any remaining assets not administered (as would normally happen pursuant to 11 U.S.C. § 554). As such, Defendants assert that, even though the bankruptcy actions have both closed, the rights to the asbestos claims did not revert back to Mr. Gaito upon those closures and instead remain with the trustee(s), such that Plaintiffs may not now pursue them.

With respect to the non-malignancy claims, Plaintiffs assert that, because these claims were "uncertain" during his bankruptcy, they were never assets of the bankruptcy estate (regardless of whether or not they were disclosed). Therefore, according to Plaintiffs, they (and not the bankruptcy trustee) are the proper party to pursue these claims.

With respect to the malignancy claims, Plaintiffs assert that, because the lung cancer diagnosis was not made (and, therefore, the lung cancer claims did not arise) until after Mr. Gaito was discharged from bankruptcy, they were never assets of the bankruptcy estate – and Mr. Gaito could not have

9

been required to disclose them. In short, Plaintiffs argue that the bankruptcy estate could not have an asset that was not in existence at the time of the bankruptcy.

2.   Malignancy Claims

With respect to the malignancy claims, Defendants also assert, as another alternative, that Plaintiffs' claims for malignant asbestos-related disease (based upon the post-petition diagnosis of lung cancer, which occurred while the Second Bankruptcy was still pending) are property of the estate, such that Plaintiffs also lack standing to pursue these claims – despite the fact that the diagnosis of lung cancer did not occur until after Mr. Gaito's bankruptcy action was filed – because those claims are sufficiently rooted in his pre-bankruptcy past to constitute property of the estate.[5] Specifically, Defendants argue that, under Segal, any new claim that is "sufficiently rooted in the pre-bankruptcy past" should be included in the

---

[5]      In support of this contention, Defendants rely primarily upon Segal v. Rochelle, 382 U.S. 375, 380 (1966), and In re Richards, 249 B.R. 859, 861 (Bankr. E.D. Mich. 2000)(involving a post-petition asbestos claim). They also cite In re Sommer, 2008 WL 704401 (Bankr. N.D. Ohio March 14, 2008)(also involving a post-petition asbestos claim). In addition, Defendants also cite to a number of cases that did not involve an asbestos claim: In re Webb, 484 B.R. 501 (Bankr. M.D. Ga. 2012); In re Strada Design Assocs., Inc., 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005); In re Salander, 450 B.R. 37, 46 (Bankr. S.D.N.Y. 2011); Field v. Transcontinental Ins. Co., 219 B.R. 115, 119 (E.D. Va. 1998); Rivera v. Ndola Pharmacy Corp., 497 F. Supp. 2d 381 (E.D.N.Y. June 29, 2007); and In re Borchert, 2010 WL 153384 (Bankr. N.D.N.Y. Jan. 8, 2010).

debtor's bankruptcy estate, 382 U.S. at 380, and that, since the asbestos exposures (and the non-malignant asbestos injury) arose pre-bankruptcy, any injuries arising therefrom (such as Mr. Gaito's lung cancer claims) should be considered part of the bankruptcy estate because they are "sufficiently rooted in the pre-bankruptcy past."

Plaintiffs assert that the claims for malignant asbestos-related disease (based upon the post-petition diagnosis of lung cancer) are not property of the estate – and never were – because they did not arise until after Mr. Gaito had been discharged from bankruptcy. In support of this argument, Plaintiffs cite to this MDL's court's decision, <u>Nelson v. A.W. Chesterton</u>, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.), holding that maritime law follows the "two-disease rule" such that Mr. Gaito's lung cancer diagnosis gave rise to a malignant disease that constitutes a second and separate cause of action from that initially filed for his non-malignant asbestos-related disease. As such, Plaintiffs seems to suggest that, even if the Court should determine that the non-malignancy claims are property of the bankruptcy estate that Plaintiffs are now barred from pursuing, the malignancy claims (for lung cancer) are not property of the estate (and never were), such that Plaintiffs may still pursue those claims free and clear of

any debts not fully paid to creditors in the bankruptcy
action(s).

## IV.  DISCUSSION

The bankruptcy code requires debtors seeking benefits
under its terms to schedule, for the benefit of creditors, all
his or her interests and property rights. Oneida Motor Freight,
Inc. v. United Jersey Bank, 848 F.2d 414, 416 (3d Cir. 1988); 11
U.S.C. §§ 521, 1125. This duty of disclosure includes not only
pending lawsuits or lawsuits the debtor intends to bring, but
even any potential and likely causes of action. See Krystal
Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp., 337
F.3d 314, 322 (3d Cir. 2003); Oneida, 848 F.2d at 417 (providing
that "[i]t has been specifically held that a debtor must
disclose any litigation likely to arise in a non-bankruptcy
contest"). However, debtors are not required to list "every
'hypothetical,' 'tenuous,' or 'fanciful' claim on an asset
disclosure form." Freedom Med., Inc. v. Gillespie, No. 06-3195,
2013 WL 2292023, at *23 (E.D. Pa. May 23, 2013) (quoting Krystal
Cadillac, 337 F.3d at 323).

Once the debtor has filed his bankruptcy petition, the
bankruptcy estate - which in a Chapter 7 case is controlled by
the trustee - "encompasses everything that the debtor owns upon
filing a petition, as well as any derivative rights, such as

property interests the estate acquires after the case commences." In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000). "While a bankruptcy case is pending, it is the trustee, and not the debtor, who has the capacity to pursue the debtor's claims." In re Kane, 628 F.3d at 637 (internal quotation marks and citations omitted). Additionally, "[p]ursuant to 11 U.S.C. § 554(d), a cause of action which a debtor fails to schedule, remains property of the estate because it was not abandoned and not administered." Allston-Wilson v. Philadelphia Newspapers, Inc., No. 05-4056, 2006 WL 1050281, at *1 (E.D. Pa. Apr. 20, 2006); see also In re Kane, 628 F.3d at 637 ("an asset must be properly scheduled in order to pass to the debtor through abandonment under 11 U.S.C. § 554") (quoting Hutchins v. IRS, 67 F.3d 40, 43 (3d Cir. 1995)).

Typically, the only interests that a bankruptcy estate owns are those that a plaintiff has at the time the petition is filed. In re O'Dowd, 233 F.3d 197, 202 (3d Cir. 2000) (concluding that the bankruptcy "estate encompasses everything that the debtor owns upon filing a petition") (emphasis added); 11 U.S.C. § 541(a)(1). However, any new, post-petition interest (such as a legal claim) that is "sufficiently rooted in the pre-bankruptcy past" can also constitute part of the debtor's bankruptcy estate. See Segal v. Rochelle, 382 U.S. 375 (1966).

Judicial estoppel is a "doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996) (internal quotation marks and citations omitted). At the heart of judicial estoppel is the idea that "absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Id. (quoting 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4477 (1981), p. 782). However, this doctrine is "not intended to eliminate all inconsistencies no matter how slight or inadvertent they may be." Id. It "should only be applied to avoid a miscarriage of justice" and "is only appropriate when the inconsistent positions are tantamount to a knowing misrepresentation to or even fraud on the court." Krystal Cadillac, 337 F.3d at 319, 324 (internal quotation marks and citations omitted). The "doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court.'" Ryan Operations, 81 F.3d at 362 (quoting Konstantinidis v. Chen, 626 F.2d 933, 939 (D.C. Cir. 1980)). "It is a fact-specific, equitable doctrine, applied at

courts' discretion." In re Kane, 628 F.3d 631, 638 (3d Cir. 2010).

The Third Circuit Court of Appeals has formulated this test to help determine if judicial estoppel is appropriate:

> First, the party to be estopped must have taken two positions that are irreconcilably inconsistent. Second, judicial estoppel is unwarranted unless the party changed his or her position "in bad faith – i.e., with intent to play fast and loose with the court." Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm identified" and no lesser sanction would adequately remedy the damage done by the litigant's misconduct.

Krystal Cadillac, 337 F.3d at 319-20 (quoting Montrose Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 779-80 (3d Cir. 2001)). The Third Circuit has further concluded that a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." Id. at 321 (citing Oneida Motor Freight, 848 F.2d at 416-18); Ryan Operations, 81 F.3d at 363. However, the application of this inference does not arise "from the mere fact of nondisclosure." Ryan Operations, 81 F.3d at 364. Third Circuit precedent makes clear that a court should conduct an individualized factual assessment regarding, inter alia, knowledge and motive of the debtor surrounding disclosure of assets in a bankruptcy action. See id. at 363-64 (concluding

that the inference did not apply where the creditors were most likely unaffected by the failure to disclose, the debtor received no benefit from its non-disclosure, and that there was no evidence that the debtor sought to conceal the claims deliberately); <u>Krystal Cadillac</u>, 337 F.3d at 321-324 (applying estoppel after analyzing the facts regarding knowledge and motive).

## V.   ANALYSIS

### A.   <u>Judicial Estoppel</u>

The Court considers Defendants' argument regarding judicial estoppel separately as to each set of claims (non-malignancy claims and malignancy claims) and as to each of the two bankruptcies in which Defendants assert the claims should have been disclosed.

#### 1.   <u>Non-Malignancy Claims</u>

##### a.   <u>First Bankruptcy</u>

Defendants contend that Mr. Gaito's non-malignancy asbestos claims were assets whose omission from Schedule B of the First Bankruptcy action constituted an inconsistent position between the two lawsuits and creates an inference of bad faith. Plaintiffs contend that because the diagnosis of lung cancer[6] did

---

[6]        Presumably, Plaintiffs intended to refer to Mr. Gaito's non-malignancy illness (rather than his lung cancer). Because there is no evidence in the record that the non-

not occur until after the First Bankruptcy action had been
filed, the claims did not exist at the time of that action
(i.e., were not assets) and did not need to be disclosed – and
that, if they did constitute assets that should have been
disclosed, the failure to disclose them was a good faith
mistake.

> i.   Step One: Has Plaintiff Taken Two Irreconcilably
>      Inconsistent Positions?

It is undisputed that Mr. Gaito did not list his non-
malignancy asbestos claims (or any other legal claims) as assets
in his First Bankruptcy filing. Mr. Gaito's duty of disclosure
included identifying pending lawsuits, lawsuits he intended to
bring, and any potential and likely lawsuits. See Krystal
Cadillac-Oldsmobile, 337 F.3d at 322. While there is no evidence
in the record as to when Mr. Gaito learned of his non-malignant
asbestos-related illness (or accompanying claims), it is
undisputed that he knew of these claims while the First
Bankruptcy action was still pending.[7] Therefore, in order to

---

malignancy illness was diagnosed (or manifest itself) prior to
the date on which the First Bankruptcy was filed, the Court
assumes that this is the argument Plaintiffs intended to make on
this point, as the issue at hand is whether Mr. Gaito could or
should have disclosed his non-malignancy illness in his First
Bankruptcy action.

[7]      Mr. Gaito filed his asbestos action approximately
three weeks after filing his First Bankruptcy petition – and the
First Bankruptcy action was not closed until over six months
after the filing of his asbestos action.

determine whether Plaintiffs have taken two irreconcilably
inconsistent positions, the Court must first determine whether
Mr. Gaito had a duty to amend his First Bankruptcy petition to
include his non-malignancy asbestos claims. Defendants have not
cited any authority from the Third Circuit that supports the
proposition that Mr. Gaito was required to amend his petition to
include asbestos claims discovered after the filing of his
petition.[8] The Court has searched for but has not located any
such authority.[9]

---

[8]     There is no evidence in the record that Mr. Gaito was
aware of his non-malignancy asbestos claims (or his non-
malignant asbestos illness) at the time that the First
Bankruptcy action was filed. This Court has held that maritime
law recognizes the "discovery rule" in determining the accrual
of an asbestos-related claim, such that under maritime law, a
"cause of action accrues when the injury manifests itself," with
the "key inquiry [being] whether the plaintiff has knowledge of
the injury and its cause." Nelson v. A.W. Chesterton, 2011 WL
6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). There is no
evidence in the record that Mr. Gaito's non-malignant injury had
manifest itself – or that he had knowledge of its cause – prior
to the filing of his First Bankruptcy action. The earliest date
on which the evidence indicates he had knowledge of this injury
or its cause is the date on which his asbestos action was filed.
As such, there is no evidence that Mr. Gaito's claims had even
accrued on any date prior to the date on which he filed his
First Bankruptcy petition.

[8]     Nor have Defendants cited any cases from outside the
Third Circuit that support this proposition.

[9]     The Court is aware of the decision in Coles v.
Carlini, 2013 WL 3811642 (D.N.J. 2013), which held that a debtor
has an obligation to amend a bankruptcy petition to disclose
newly discovered claims. However, that decision (1) involved a
Chapter 13 petition, (2) relied solely on authority pertaining
specifically to Chapter 13 (including, in particular, 11 U.S.C.

There is no evidence that Mr. Gaito knew of his non-malignancy asbestos claims when he filed his First Bankruptcy petition (and did not include asbestos claims as an asset in his bankruptcy filings). Under these specific circumstances and pursuant to the discovery rule, there is no duty for a Chapter 7 debtor to amend a petition to disclose claims discovered after the date of the filing of the petition. Therefore, although it is true both that Mr. Gaito represented to the Bankruptcy Court

---

§ 1306), and (3) did not cite any authority for the proposition that such an amendment is also required for a Chapter 7 petition. The rationale for requiring an amendment in a Chapter 13 bankruptcy action does not apply to a Chapter 7 petition: Chapter 7 is designed to liquidate existing assets for distribution to creditors in order "to leave the bankrupt **free after the date of his petition to accumulate new wealth** in the future," Segal, 382 U.S. at 379 (emphasis added), while Chapter 13 (like Chapter 11) is designed to adjust debts in order to reorganize payments to creditors on debts that will continue to exist even after the bankruptcy is closed. See In re Michael, 699 F.3d 305, 306-07, n.1 (3d Cir. 2012). In re Michael held that a Chapter 13 trustee holding funds acquired post-petition by the debtor (for eventual distribution to creditors under a confirmed Chapter 13 reorganization plan) must return those post-petition funds to the debtor upon conversion of the case to a Chapter 7 case. Id. at 307. Therefore, Cole is not applicable here.

While it is true that a cause of action that arises after the filing of a bankruptcy petition belongs to the bankruptcy estate if it is "sufficiently rooted in the pre-bankruptcy past," Segal, 382 U.S. at 380, this raises an issue separate from whether Plaintiffs' non-malignancy asbestos claims are judicially estopped due to any failure on the part of Mr. Gaito to amend his First petition – an issue dealt with later herein (i.e., whether Plaintiffs or the First Bankruptcy estate are/is the real party-in-interest to (at least some claims in) the asbestos action).

(at the time of the filing of his First petition) that such an asset did not exist, and that Plaintiffs are now pursing those same claims that Mr. Gaito represented did not exist, the two positions are not irreconcilably inconsistent. See id. at 319-320.

ii.  Step Two: Did Plaintiff Change His Position In Bad Faith

In light of the foregoing determination (i.e., that there was not a change in position on the part of Mr. Gaito in not identifying his non-malignancy asbestos claims in his First Bankruptcy petition), the analysis on this issue is complete, and the Court need not reach the second step of the analysis (whether there was "bad faith" behind such a change).

b.  Second Bankruptcy

Defendants contend that Mr. Gaito's non-malignancy asbestos claims were assets whose omission from Schedule B of the Second Bankruptcy action constituted an inconsistent position between the two lawsuits and creates an inference of bad faith. Plaintiffs contend that because the claims were uncertain at the time of that action, they were, in essence, not assets and, therefore did not need to be disclosed – and that, if they did constitute assets that should have been disclosed, the failure to disclose them was a good faith mistake.

   i. <u>Step One: Has Plaintiff Taken Two Irreconcilably</u>
     <u>Inconsistent Positions?</u>

   It is undisputed that Mr. Gaito did not list his non-malignancy asbestos claims (or any other legal claims) as assets in his Second Bankruptcy filing. Mr. Gaito's duty of disclosure included identifying pending lawsuits, lawsuits he intended to bring, and any potential and likely lawsuits. <u>See</u> <u>Krystal Cadillac-Oldsmobile</u>, 337 F.3d at 322. It is undisputed that Mr. Gaito knew of his non-malignancy asbestos claims at the time of the Second Bankruptcy. By failing to include those asbestos claims as an asset in his First Bankruptcy filings, Mr. Gaito represented to the Bankruptcy Court that such an asset did not exist. Now, in this Court, Plaintiffs are pursing those same claims that Mr. Gaito represented did not exist. Accordingly, the two positions are irreconcilably inconsistent. <u>See</u> <u>id.</u> at 319-320.

   ii. <u>Step Two: Did Plaintiff Change His Position In</u>
     <u>Bad Faith</u>

   It is difficult to divine, through a prism of twenty years later, the exact nature and scope of the "administrative dismissals." <u>See</u> <u>Bartel v. Various Defendants</u>, 965 F. Supp. 2d 612, 617 (E.D. Pa. 2013) (Robreno, J.) (explaining the difficulty in attempting to discern orders that were entered over twenty years ago in the context of personal jurisdiction in

the MARDOC cases).[10] While Judge Weiner's orders appear to invite reinstatement subject to certain conditions, none of the cases that were administratively dismissed was ever reinstated from 1997 to 2009, until this Court, <u>sua</u> <u>sponte</u>, did so <u>en</u> <u>masse</u>. That a layman would have had the foresight to know in 2001 when he filed for Chapter 7 bankruptcy (in the Second Bankruptcy), that ten years later a new presiding Judge of the MDL would reopen his asbestos case, albeit sixteen years after it was filed, would have required unrealistic power of prescience. Rather, for all practical purposes, the entire MARDOC litigation in the MDL Court - including Mr. Gaito's case - was in a "black hole," uncertain to ever emerge again. <u>See</u> Hon. Eduardo C. Robreno, <u>The Federal Asbestos Product Liability Multidistrict Litigation (MDL-875): Black Hole or New Paradigm?</u>, 23 Widener L. J. 97, 126 (2013).

        Under these circumstances, the Court finds that the failure to disclose the non-malignancy asbestos claims was not in bad faith, nor an attempt to play "fast and loose" with the

---

[10]        "Now, some 25 years later, the Court, with the assistance of counsel, is called upon to divine the meaning of less-than-pellucid orders entered long ago by prior courts, and to disentangle the parties from a web of procedural knots that have thwarted the progress of this litigation." <u>Bartel</u>, 965 F. Supp. 2d at 614.

Bankruptcy Court. See Krystal Cadillac, 337 F.3d at 319-20.[11]

Accordingly, the Court does not find that Mr. Gaito changed his position "in bad faith" such that it warrants the application of judicial estoppel. See Ryan Operations, 81 F.3d at 363.[12]

Accordingly, Defendant's motion for summary judgment on grounds of judicial estoppel will be denied. See Anderson, 477 U.S. at 248-50.

---

[11]     While the Third Circuit has said that, a "rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose," Krystal Cadillac, 337 F.3d at 321, the Third Circuit has also noted that an inference of bad faith does not always arise from "the mere fact of non-disclosure." Ryan Operations, 81 F.3d at 364. Under the facts of this case, the Court need not decide whether there was a lack of bad faith on the part of Plaintiff, or whether the inference of bad faith was rebutted, in that in either event, the same result is obtained.

[12]     Additionally, the Court has reviewed the bankruptcy petition filed by Mr. Gaito, see ECF No. 66-2 at 46-48, and concludes that, to the extent the law generally requires disclosures of the type of claims that were pending at the time of the bankruptcy filing, an omission of those claims may very well have been based on a good faith mistake of what was required by the documents, or a simple incorrect assessment of the viability of his long-dormant claims. See Ryan Operations, 81 F.3d at 362.

2.   Malignancy Claims (Second Bankruptcy[13])

Defendants contend that Mr. Gaito's malignancy
asbestos claims were assets whose omission from Schedule B of
the Second Bankruptcy action constituted an inconsistent
position between the two lawsuits and creates an inference of
bad faith. Plaintiffs contend that because the diagnosis of lung
cancer did not occur until after the Second Bankruptcy action
had been filed, the claims did not exist at the time of that
action (i.e., were not assets) and did not need to be disclosed
– and that, if they did constitute assets that should have been
disclosed, the failure to disclose them was a good faith
mistake.

i.   Step One: Has Plaintiff Taken Two Irreconcilably
     Inconsistent Positions?

It is undisputed that Mr. Gaito did not list his
malignancy asbestos claims (or any other legal claims) as assets
in his Second Bankruptcy filing. Mr. Gaito's duty of disclosure
included identifying pending lawsuits, lawsuits he intended to

---

[13]    Because Mr. Gaito's lung cancer diagnosis occurred
during the pendency of the Second Bankruptcy (and there is no
evidence in the record that he knew of this illness, or that it
had manifest itself at any time prior to the First Bankruptcy),
it is clear (and does not appear to be contested by Defendants),
that Mr. Gaito was not required to identify his malignancy
claims in his First Bankruptcy petition (by way of amendment or
otherwise). Therefore, with respect to Plaintiffs' malignancy
claims, the Court need not analyze Defendants' judicial estoppel
argument as to the First Bankruptcy (and instead analyzes the
argument only as to the Second Bankruptcy).

24

bring, and any potential and likely lawsuits. See Krystal
Cadillac-Oldsmobile, 337 F.3d at 322. It is undisputed that Mr.
Gaito learned of these claims while the Second Bankruptcy action
was still pending.[14] As explained earlier herein, the Court has
determined that under the circumstances of this case and
pursuant to the discovery rule, Mr. Gaito did not have a duty to
amend the Second Bankruptcy petition to include his malignancy
claims (because they accrued and were discovered after the date
of the filing of the Second Bankruptcy petition).  Therefore,
although it is true both that Mr. Gaito represented to the
Bankruptcy Court (at the time of the filing of his Second
petition) that such an asset (i.e., malignancy claims) did not
exist, and that Plaintiffs are now pursing those same claims

---

[14]      Mr. Gaito was diagnosed with his malignant illness
(lung cancer) approximately three months after filing his Second
Bankruptcy petition – and the Second Bankruptcy action was not
closed until approximately two months after the diagnosis of
this malignant illness.

          There is no evidence in the record that Mr. Gaito was
aware of his malignancy asbestos claims (or his malignant
asbestos illness) at the time that the Second Bankruptcy action
was filed. The earliest date on which the evidence indicates he
had knowledge of this injury or its cause (or that it had
manifest itself) is the date on which his lung cancer was
diagnosed. Under the "discovery rule" recognized by maritime law
in determining the accrual of an asbestos-related claim, there
is no evidence that Mr. Gaito's malignancy claims had accrued on
any date prior to the date on which he filed his Second
Bankruptcy petition. Nelson, 2011 WL 6016990.

that Mr. Gaito represented did not exist, the two positions are not irreconcilably inconsistent. See id. at 319-320.

> ii. Step Two: Did Plaintiff Change His Position In Bad Faith

In light of the foregoing determination (i.e., that there was not a change in position on the part of Mr. Gaito in not identifying his malignancy asbestos claims in his Second Bankruptcy petition), the analysis on this issue is complete, and the Court need not reach the second step of the analysis (whether there was "bad faith" behind such a change).[15]

---

[15]    The Court notes nonetheless, that it would not conclude that any purported change in position by Mr. Gaito was done in "bad faith." While Judge Weiner's orders appear to have invited reinstatement of asbestos actions subject to certain conditions, none of the cases that were administratively dismissed was ever reinstated from 1997 to 2009, until this Court, sua sponte, did so en masse. That a layman such as Mr. Gaito would have had the foresight to know in 2001 when he filed for Chapter 7 bankruptcy (in the Second Bankruptcy), that ten years later a new presiding Judge of the MDL would reopen his asbestos case, albeit sixteen years after it was filed, would have required unrealistic power of prescience. Rather, for all practical purposes, the entire MARDOC litigation in the MDL Court - including Mr. Gaito's case - was in a "black hole," uncertain to ever emerge again. See Hon. Eduardo C. Robreno, The Federal Asbestos Product Liability Multidistrict Litigation (MDL-875): Black Hole or New Paradigm?, 23 Widener L. J. 97, 126 (2013). Under these circumstances, the Court finds that any purported failure to disclose the malignancy asbestos claims was not in bad faith, nor an attempt to play "fast and loose" with the Bankruptcy Court. See Krystal Cadillac, 337 F.3d at 319-20. Accordingly, the Court would not find that Mr. Gaito changed his position "in bad faith" such that it warrants the application of judicial estoppel. See Ryan Operations, 81 F.3d at 363.

B.   Real Party in Interest/Standing

    1.   Non-Malignancy Claims

        Defendants next contend that, despite Mr. Gaito's
failure to list his non-malignancy asbestos claims on his
bankruptcy petitions (First Bankruptcy or Second Bankruptcy),
those claims now belong to (one or both of) the bankruptcy
trustee(s) (pursuant to 11 U.S.C. § 541(a)(1) such that
Plaintiffs have no right to pursue them. Specifically,
Defendants argue that, even though Mr. Gaito did not report his
non-malignancy asbestos claims as assets in the bankruptcy
filings, as required by 11 U.S.C. § 541(a)(1), those claims
automatically became part of one or both of the bankruptcy
estate(s) when the bankruptcy petitions were filed. As a result,
they assert that only the bankruptcy trustee(s) can administer
the claims.

        Defendants also assert that, because Mr. Gaito did not
properly schedule those claims as assets, the trustees (of
either or both of the bankruptcy actions) were incapable of
passing those claims back to Mr. Gaito through abandonment of
any remaining and unpursued assets as would normally happen
pursuant to 11 U.S.C. § 554. As such, Defendants assert that,
even though the bankruptcy actions have both closed, the rights
to the non-malignancy asbestos claims did not revert back to Mr.

Figueroa upon those closures and instead remain with the trustee(s), such that Plaintiffs may not now pursue them.

In determining who is(are) the real party(ies)-in-interest to the non-malignancy claims, the Court analyzes the facts and law with respect to each bankruptcy separately:

### a.   First Bankruptcy

The Court has held that, absent evidence that Mr. Gaito knew of his non-malignancy asbestos claims at the time he filed the First Bankruptcy petition, he was not required to schedule those claims (initially or by way of amendment). The question then is whether the claims were nonetheless property of the First Bankruptcy estate by operation of law.

A bankruptcy estate typically owns only those interests that a plaintiff has at the time a petition is filed, In re O'Dowd, 233 F.3d at 202 , and 11 U.S.C. § 541(a)(1). However, the Supreme Court has held that, when a cause of action arises after the filing of a bankruptcy petition, the claim belongs to the bankruptcy estate only if it is "sufficiently rooted in the pre-bankruptcy past." Segal, 382 U.S. at 380. Therefore, the Court must determine whether Mr. Gaito's non-malignancy asbestos claims were sufficiently rooted in the pre-First Bankruptcy past to be property of the First Bankruptcy estate. Id. In doing so, it will consider cases relied upon by the Thompson Hine Defendants to support their contention that

the claims are sufficiently rooted in the pre-bankruptcy estate
to constitute property of the estate.

In <u>Segal</u>, the Supreme Court concluded that a tax
refund originating from a tax return filed before the bankruptcy
petition was property of the estate, even though the refund was
not payable until after the petition was filed. Segal, 382 U.S.
at 379-82. In explaining its rationale in <u>Segal</u>, the Supreme
Court stated:

> The main thrust of [the relevant section of the
> bankruptcy code] is to secure for creditors everything
> of value the bankrupt may possess in alienable or
> leviable form when he files his petition. To this end
> the term "property" has been construed most generously
> and an interest is not outside its reach because it is
> novel or contingent or because enjoyment must be
> postponed. <u>E.g.</u>, <u>Horton v. Moore,</u> 6 Cir., 110 F.2d 189
> (contingent, postponed interest in a trust);
> <u>Kleinschmidt v. Schroeter</u>, 9 Cir., 94 F.2d 707
> (limited interest in future profits of a joint
> venture); <u>see</u> 3 Remington, <u>Bankruptcy</u> ss 1177—1269
> (Henderson ed. 1957). However, limitations on the term
> do grow out of other purposes of the Act; **one purpose
> which is highly prominent and is relevant in this case
> is to leave the bankrupt free after the date of his
> petition to accumulate new wealth in the future.**
>
> .          .          .
>
> Temporally, two key **elements pointing toward
> realization of a refund existed at the time these
> bankruptcy petitions were filed**: taxes had been paid
> on net income within the past three years, and the
> year of bankruptcy at that point exhibited a net
> operating loss.

382 U.S. at 379 (emphasis added). The facts of <u>Segal</u> are
distinguishable from those of the present situation because,

unlike the expected tax refund in <u>Segal</u>, there is no evidence
that Mr. Gaito knew of his non-malignancy asbestos claims at the
time he filed his First Bankruptcy. As the Supreme Court noted
in <u>Segal</u>, one of the primary purposes of allowing bankruptcy
filings and limiting the forfeiture of assets to those existing
at the time of the filing is to allow the bankrupt to start
afresh and accumulate new wealth in the future. In short, the
rationale of <u>Segal</u> (and the bankruptcy law interpreted by the
Supreme Court therein) does not support a decision to preclude
Plaintiffs from obtaining now a recovery on a claim that Mr.
Gaito did not know existed at the time he filed his First
Bankruptcy. This is true despite the fact that the alleged
asbestos exposure giving rise to the claim occurred long before
that bankruptcy was filed – a factual scenario considered by a
bankruptcy court in Michigan in <u>In re Richards</u>, 249 B.R. 859,
861 (Bankr. E.D. Mich. 2000), upon which Defendants rely.

Like the case at hand, <u>In re Richards</u> involved an
asbestos claim for an illness that (apparently, and with no
evidence in the record to the contrary) was diagnosed after a
debtor had filed for bankruptcy and while the bankruptcy action
was still pending. The court held (in accord with <u>Segal</u>) that,
"in determining whether a claim is property of the bankruptcy
estate, the test is not the date that the claim accrues under
state law" but "whether the claim is 'sufficiently rooted in the

pre-bankruptcy past'." 249 B.R. at 861. The court concluded that
the debtor's asbestos-related cancer claim was sufficiently
rooted in his pre-petition past and should therefore be
considered part of the bankruptcy estate based on the two facts
that: (1) "All of the allegedly wrongful conduct giving rise to
the debtor's claim occurred prepetition," and (2) "although the
diagnosis was made seven months after the petition was filed,
that timing appears to have been more a result of happenstance
than of medical necessity. It appears likely that both the <u>onset
of the debtor's disease</u> and a <u>greater portion of its progress</u>
occurred before he filed his petition." <u>Id.</u> (emphasis added).
The Court notes that <u>In re Richards</u> is not binding on this court
and, in addition, involved claims that were governed by Michigan
law (under which the causes of action accrued when the plaintiff
"knew or should have known" of his asbestos-related illness,
<u>id.</u>) rather than maritime law (under which an asbestos cause of
action accrues when the illness manifests itself, or when the
plaintiff has knowledge of the injury and its cause, <u>Nelson</u>,
2011 WL 6016990 (E.D. Pa. Oct. 27, 2011)).

        In the case at hand, there is no evidence in the
record that Mr. Gaito knew of his non-malignant asbestos
illness, or experienced any symptoms of that illness, prior to
the date on which the First Bankruptcy petition was filed. As
such, unlike <u>In re Richards</u> (where an asbestos claim accrued

under the applicable law when a plaintiff "should have" known of his illness), it cannot be concluded that Mr. Gaito's non-malignant asbestos claim accrued (under maritime law) prior to the filing of his First Bankruptcy petition. Moreover, without evidence in the record to the contrary, the Court is unwilling to conclude that the onset of Mr. Gaito's non-malignant asbestos-related disease – or any of its progress - occurred prior to the date of the filing of his First Bankruptcy petition. This is because mere pre-petition exposure to asbestos did not necessarily result in an injury to Mr. Gaito. It was not until that illness actually manifest itself that the exposure gave rise to a claim – and an interest over which the bankruptcy trustee could potentially have ownership. Therefore, even when applying the rationale of In re Richards, the Court must conclude that, although the alleged asbestos exposure giving rise to the non-malignancy asbestos claims occurred prior to the filing of his First Bankruptcy petition, Mr. Gaito's non-malignancy asbestos claims are not "sufficiently rooted" in his pre-bankruptcy past to be deemed property of the bankruptcy estate.

In re Sommer, which also involved an asbestos claim, ownership of which was claimed by a bankruptcy trustee, is distinguishable from the case at hand because, in that case, the asbestos illness was diagnosed prior to the filing of the

32

bankruptcy action. 2008 WL 704401. As such, it has no
applicability to the case at hand.

Defendants also cite to a number of cases that did not
involve an asbestos claim. In re Webb is factually analogous
insofar as it involved a claim based upon a latent physical
injury. 484 B.R. 501 (Bankr. M.D. Ga. 2012). In that case, a
debtor received a post-petition class action settlement for
congestive heart failure he was believed to have suffered as a
result of having taken a particular medication years earlier.
Although the congestive heart failure occurred two years prior
to the filing of the bankruptcy petition, the debtor did not
know that there was any link between the medication and
congestive heart failure until well after his bankruptcy action
had been filed and closed. Upon the bankruptcy trustee's
petitioning for a reopening of the bankruptcy action to recover
this class action settlement from the debtor in order to
administer it as part of the bankruptcy estate, the court
concluded that the product liability claim was property of the
bankruptcy estate despite the fact that the debtor did not
become aware of the claim until after his bankruptcy action was
filed (and closed). Importantly, however, the court's decision
turned entirely on its reluctant acknowledgment that, under the
law applicable therein, the "discovery rule" did not apply to

the debtor's product liability cause of action. Specifically,

that court explained:

> **But after reconsidering Alvarez, the Court concludes that the inapplicability of the discovery rule was necessary to the Eleventh Circuit's holding.** The alleged malpractice was advising and filing a Chapter 7 bankruptcy instead of a Chapter 11 bankruptcy and failing to convert, resulting in the trustee selling assets at a price disagreeable to the debtor. See In re Alvarez, 224 F.3d at 1275; In re Alvarez, 228 B.R. 762, 763 (Bankr. M.D. Fla. 1998). The fight over ownership of the claim (malpractice arising from mishandling a bankruptcy case) occurred in the very bankruptcy proceeding that was the subject of the malpractice claim. Under these facts, the debtor necessarily discovered the injury and cause postpetition. **The discovery rule not applying is essential for the holding** — that the cause of action accrued as of the filing and thus was property of the estate — because there is no logical way the discovery rule could apply and the Court's holding stay the same. **Because In re Alvarez is binding on this Court, and thus all necessary elements of that decision are binding on this Court, the Court can only conclude that the discovery rule does not apply to the present circumstances. The Court will look to whether the elements of the product liability claim occurred before or after filing.** It is undisputed that everything, except for knowledge of cause, occurred prepetition. The Court thus holds that the product liability claim accrued prepetition and is estate property.

484 B.R. at 504-05 (emphasis added). Significantly, however,

maritime law recognizes the "discovery rule" in determining the

accrual of an asbestos-related claim. See Nelson, 2011 WL

6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). For this reason,

the rationale of In re Webb is inapplicable to the case at hand,

which is governed by maritime law (and under which, as explained

earlier herein, Mr. Gaito's claim did not accrue prior to the
filing of his petition and is not sufficiently rooted in his
pre-bankruptcy past to constitute property of the bankruptcy
estate).

In re Borchert, 2010 WL 153384 (Bankr. N.D.N.Y. Jan.
8, 2010) (like In re Webb) involved a bankruptcy petitioner who
experienced heart attacks he was believed to have suffered as a
result of having taken a particular medication. The Court
therein held that a class action settlement that the debtor
received in connection with his medication-related heart illness
was property of the estate (although it was received after the
bankruptcy action was closed) because it was sufficiently rooted
in the pre-bankruptcy past. The facts and reasoning of In re
Borchert, however, make it distinguishable from the case at
hand. The debtor in that case had not only exposure to the
medication before the filing of the bankruptcy action, but also
pre-heart attack symptom manifestation for several years before
filing the bankruptcy action. In the case at hand, there is no
evidence that Mr. Gaito experienced asbestos-related symptoms
prior to the filing of the First Bankruptcy action. Moreover,
the court in In re Borchert based its decision in large part on
the fact that "only a small portion of [Mr. Borchert's] net
[settlement] award (less than 10%) would be required to fund a
100% dividend to [his] creditors" such that "a determination

that the [settlement] award is property of the Debtors' estate
would not have a serious impact on the Debtors' fresh start"
accumulating wealth after the bankruptcy. 2010 WL 153384 at *2;
see id. at *4. In the case a hand, unlike the court in In re
Borchert, which had the pre-determined settlement amount at its
ready, the MDL Court is not in a position to know the amount of
recovery that Plaintiff will obtain for Mr. Gaito's non-
malignancy asbestos claims. However, in light of the fact that
Mr. Gaito's debts at the time of the filing of the First
Bankruptcy totaled over $46,000 (with assets totaling less than
$12,000), it unlikely that the Court could allow the creditors
to the First Bankruptcy to be paid from a recovery on Mr.
Gaito's non-malignancy claims without consuming all or most of
the recovery, as the amount still owed to the creditors would be
somewhere in excess of $34,000 (a fairly large amount in
comparison to a typical recovery for a non-malignancy asbestos
claim).

  Field v. Transcontinental Ins. Co. is also
distinguishable insofar as the court therein determined that the
claim at issue (a "bad faith" claim against an insurer) was
property of the bankruptcy estate because all of the events
giving rise to the claim occurred prior to the debtor's filing
of the bankruptcy petition. 219 B.R. at 119. As such, it has no
bearing on the case at hand, where there is no evidence of the

events giving rise to accrual of Mr. Gaito's non-malignancy
asbestos claims until after the First Bankruptcy petition was
filed.

Rivera v. Ndola Pharmacy Corp. is also
distinguishable. In that case, the court considered "whether a
cause of action that accrues after the petition has been filed
but before the bankruptcy proceeding terminates becomes property
of the estate." 497 F. Supp. 2d at 396. The Court held that the
claim at issue was not sufficiently rooted in the pre-petition
past to be owned by the bankruptcy estate because none of the
relevant events occurred until after the petition had been
filed. As such, it either has no bearing on this case or
suggests that Mr. Gaito's non-malignancy claims are not owned by
the First Bankruptcy estate.

In re Salander involved a debtor's effort to pursue a
claim against one of her creditors after her bankruptcy action
was closed. 450 B.R. 37 (Bankr. S.D.N.Y. 2011). The court held
that the claim was property of the bankruptcy estate for either
or both of two reasons: First, the court determined that, under
New York law, her claim had accrued pre-petition (because she
knew of the alleged forgery giving rise to her claim prior to
the filing of her petition) and was, therefore, property of the
bankruptcy estate. Id. at 46. In this regard, this case is
inapplicable to Mr. Gaito's situation, which is governed by

maritime law, and for which there is no evidence of accrual of the non-malignancy claims until after the First Bankruptcy action was filed. See Nelson, 2011 WL 6016990 (E.D. Pa. Oct. 27, 2011) (Robreno, J.). Second, the court found (without much explanation) that, even if the debtor had not discovered the extent of the alleged forgery at issue, the actions giving rise to her claims (alleged fraudulent signing of documents) occurred prior to the petition and were, therefore, "sufficiently rooted in the pre-bankruptcy past." The factual scenario therein is distinguishable from that of Mr. Gaito's insofar as the fraud (and accompanying harm) had occurred and existed pre-petition regardless of whether and when they were discovered by Mrs. Salander. In contrast, Mr. Gaito's pre-petition asbestos exposure did not necessarily result in an injury at all and, instead, only resulted in injury upon the development of his illness. As such, the crucial element of development of his non-malignant illness occurred post-petition (and there is no evidence in the record that its development may have occurred pre-petition). As such, the rationale of In re Salander does not lead to a conclusion that Mr. Gaito's non-malignancy claims are property of the First Bankruptcy estate – despite that fact that the alleged asbestos exposure giving rise to those claims occurred prior to the filing of the petition in the First Bankruptcy Action.

In re Strada Design Assocs., Inc. followed the same rationale as In re Salander and its analysis explicitly turned on the decision that formed the basis of In re Webb (Alvarez, 224 F.3d 1273). 326 B.R. 229, 236 (Bankr. S.D.N.Y. 2005). Thus, for the same reasons that In re Salander and In re Webb did not lead to the conclusion that Mr. Gaito's non-malignancy claims are property of the First Bankruptcy estate, In re Strada does not either.

In short, none of the cases relied upon by Defendant support the conclusion that Mr. Gaito's non-malignancy asbestos claims are property of the First Bankruptcy estate. Applying the rationale of Segal, the Court concludes that, given the facts of the present case, and the standard set forth by maritime law for determining accrual of an asbestos cause of action (including, specifically, its utilization of the "discovery rule"), Mr. Gaito's non-malignancy asbestos claims are not "sufficiently rooted in his pre-bankruptcy past to constitute property of the bankruptcy estate (pursuant to the exception to 11 U.S.C. § 541(a)(1) set forth in In re O'Dowd). Instead, the general rule of § 541(a)(1), as discussed in In re O'Dowd, 233 F.3d at 202 (limiting bankruptcy estate property to that in existence at the time of the filing of the petition), is applicable. Mr. Gaito's non-malignancy asbestos claims (which did not accrue until after the First Bankruptcy petition was filed) are, therefore, not

property of the First Bankruptcy trustee (and not subject to
pursuit by creditors in that bankruptcy action). Accordingly,
with respect to Mr. Gaito's <u>non-malignancy</u> asbestos claims,
Defendants' motion for summary judgment on grounds that are
property of the <u>First</u> Bankruptcy estate (because they are
sufficiently rooted in the pre-bankruptcy past) is denied.
<u>Anderson</u>, 477 U.S. at 248-50.

   b.   <u>Second Bankruptcy</u>

      It is undisputed that Mr. Gaito knew of his non-
malignancy asbestos claims at the time he filed his Second
Bankruptcy petition, but did not schedule them as an asset in
that bankruptcy. A bankruptcy estate, which is controlled by the
trustee, "encompasses everything that the debtor owns upon
filing a petition, as well as any derivative rights, such as
property interests the estate acquires after the case
commences." <u>In re O'Dowd</u>, 233 F.3d 197, 202 (3d Cir. 2000).
"[I]t is the trustee, and not the debtor, who has the capacity
to pursue the debtor's claims." <u>In re Kane</u>, 628 F.3d at 637
(internal quotation marks and citations omitted). "Pursuant to
11 U.S.C. § 554(d), a cause of action which a debtor fails to
schedule, [generally] remains property of the estate because it
was not abandoned and not administered." <u>Allston-Wilson</u>, 05-CV-

4056, 2006 WL 1050281, at *1; In re Kane, 628 F.3d at 637
(quoting Hutchins, 67 F.3d at 43).

        In the instant case, Mr. Gaito erred by failing to
disclose his administratively dismissed non-malignancy asbestos
claims when he filed his Second Bankruptcy petition. While the
Court has held that this error was not in bad faith and thus not
barred by judicial estoppel, these claims are nonetheless part
of the Second bankruptcy estate as they were not only potential
claims, but were realized claims technically held in abeyance by
the Court, and thus needed to be disclosed. Under these
circumstances, the claims remain part of the Second Bankruptcy
estate and the Second trustee remains the real party in interest
for such claims, even after the Second bankruptcy was closed.
See Killmeyer v. Oglebay Norton Co., 817 F. Supp. 2d 681, 689
(W.D. Pa. 2011) (granting the trustee's motion to substitute for
the plaintiff as the real party in interest since the debtor's
unscheduled pre-petition claim could only be administered by the
trustee); Saellam v. Norfolk S. Corp., No. 06-123, 2007 WL
1653737, at *4 (W.D. Pa. June 6, 2007) (concluding that
"[b]ecause Plaintiff's cause of action is part of the bankruptcy
estate, and has not been abandoned by the trustee, I hold
Plaintiff is not the real party in interest and that only the
trustee in bankruptcy, as sole representative of Plaintiff's
estate, has standing to pursue the instant lawsuit"); Allston-

<u>Wilson</u>, 2006 WL 1050281, at *1 (holding that where it was undisputed that the plaintiffs cause of action arose before her bankruptcy and that she failed to list the claim on her bankruptcy schedule, only the trustee could pursue the claim); <u>see also</u> <u>Biesek v. Soo Line R. Co.</u>, 440 F.3d 410, 413-14 (7th Cir. 2006) (concluding that the trustee was the real party in interest for plaintiff's pre-bankruptcy claim which he failed to list as a bankruptcy asset and upholding the dismissal of the case since the claim did not belong to the plaintiff and the trustee had not sought to intervene).

Having held that the Second trustee, and not Plaintiffs, is the real party in interest of the instant non-malignant asbestos claims, the Court must determine the appropriate remedy. Given that the claims belong to the Second estate and that, therefore, distributions of any recovery by the Second trustee should be made in accordance with the priorities set forth in the Bankruptcy Code, that trustee shall be given the opportunity to decide, in the first instance, whether he/she will prosecute the claims.

The Court does not underestimate the practical difficulties involved. The bankruptcy case is now closed in the Bankruptcy Court for the Eastern District of Pennsylvania, and the identity and whereabouts of the Second trustee are unknown to this Court. To expedite the process of putting the Second

trustee on notice of the claims, the Court will direct the Clerk of this Court to (1) create a copy of this memorandum and accompanying order to be filed on the docket of Mr. Gaito's bankruptcy case in the Bankruptcy Court for the Eastern District of Pennsylvania (No. 01-bk-33370-BIF); (2) ascertain the identity of the trustee to that bankruptcy (i.e, the Second trustee); and (3) serve a copy of said memorandum and order upon the Second trustee at his/her last known address. That trustee will have sixty (60) days from the date of the filing of the order on the docket of the Bankruptcy Court to advise this Court that he/she intends to prosecute the instant claims.[16] In such event, the Court will stay the instant proceedings until the bankruptcy estate is reopened and the trustee can move this

---

[16]     The Second trustee will be ordered to provide a signed letter confirming that he/she has petitioned the Bankruptcy Court to reopen Mr. Gaito's Second Bankruptcy proceedings and certifying his/her intention to be added as a party-plaintiff in the instant case (substituting only as to the non-malignancy claims, with the Administrators of Mr. Gaito's estate (Willard E. Bartel and David E. Peebles) continuing as the named Plaintiffs with respect to the malignancy claims).

        If the Second Bankruptcy proceedings are reopened, the Second Trustee will have thirty (30) days from the date of the bankruptcy court's order reopening those proceedings to move in the instant case to be added as a party-plaintiff (substituting as to the non-malignancy claims).

Court to substitute himself/herself as the party-plaintiff in
this case.[17]

In the event that the trustee (1) fails to advise this
Court within sixty (60) days from the date the order is filed on
the docket of the Bankruptcy Court that he/she has petitioned the
Bankruptcy Court to reopen Mr. Gaito's Second Bankruptcy
proceedings and intends to proceed with the non-malignancy
claims, (2) declines to petition for reopening of those
proceedings, (3) fails to provide a monthly status update after
having petitioned the Bankruptcy Court, or (4) fails to move to
be added as a party-plaintiff in the instant case (substituting
only for the non-malignancy claims) within thirty days of the
Bankruptcy Court's reopening of the Second Bankruptcy case, the
Court will give Plaintiffs an additional thirty (30) days[18] to
provide this Court with notice that they intend either to pursue

---

[17]     Once the Second Trustee has petitioned the Bankruptcy
Court to reopen the Second Bankruptcy proceedings, and until a
motion for addition as a party-plaintiff (substituting only for
the non-malignancy claims) has been filed by the Second Trustee,
he/she will be required to file a monthly status update with
this Court (by the last day of each month), (a) informing the
Court of the status of the petition to reopen the Second
Bankruptcy proceedings, and (b) certifying his/her continuing
intention to pursue the non-malignancy claims in the instant
case.

[18]     Ninety (90) days from the date the order is filed on
the Bankruptcy Court's docket (for events pursuant to (1) or
(2)), or thirty (30) days from the date of the pertinent failure
pursuant to (3) or (4).

only the malignancy claims or to petition the Bankruptcy Court

for the Eastern District of Pennsylvania to reopen the Second

Bankruptcy proceedings and move in that court to compel

abandonment of the non-malignancy claims. See 11 U.S.C. §

554(b).[19] If such notice is timely provided to this Court, the

Court will stay the instant proceedings pending the disposition

of Plaintiffs' motion in the Bankruptcy Court.[20]

---

[19]     It is not clear whether the trustee's failure to
respond to the Court's order would constitute an express or
implied abandonment of the non-malignancy claims under 11 U.S.C.
§ 554. See Mele v. First Colony Life Ins., Co., 127 B.R. 82, 85-
86 (D.D.C. 1991) (noting that the mere fact the trustee was
notified of the pending lawsuit, but failed to administer it,
would not necessarily mandate a finding of implied abandonment).
Importantly, however, the party seeking to demonstrate
abandonment bears the burden of persuasion. Hanover Ins. Co. v.
Tyco Industries, Inc., 500 F.2d 654, 657 (3d Cir. 1974). In
bankruptcy proceedings, the trustee's position is similar to
that of a fiduciary to both the debtor and creditors. Under the
bankruptcy code, the trustee must "investigate the financial
affairs of the debtor," 11 U.S.C. § 704(a)(4), and "collect and
reduce to money the property of the estate," 11 U.S.C. §
704(a)(1). Moreover, the trustee "has the duty to maximize the
value of the estate," Commodity Futures Trading Comm'n v.
Weintraub, 471 U.S. 343, 353 (1985), and "in so doing is bound
to be vigilant and attentive in advancing the estate's
interests." In re Martin, 91 F.3d 389, 394 (3d Cir. 1996). "In
sum, it is the trustee's duty to both the debtor and the
creditor to realize from the estate all that is possible for
distribution among the creditors." Id. (citing 4 Collier,
Bankruptcy ¶ 704.01 (15th ed.)). Under these circumstances, the
Bankruptcy Court for the Eastern District of Pennsylvania is the
court in the best position to provide the proper parties
(including any potential creditors) with sufficient notice of
Plaintiffs' motion to compel abandonment of the non-malignancy
claims. See 11 U.S.C. § 554(b).

[20]     Plaintiffs will be ordered to provide a signed letter
certifying their intention to petition the Bankruptcy Court to

If notice is not received from either the trustee or
Plaintiff in the specified timeframe, the Court will dismiss
Plaintiff's case for failure to substitute the real party in
interest. See Fed. R. Civ. P. 17(a)(3) ("The court may not
dismiss an action for failure to prosecute in the name of the
real party in interest until, after an objection, a reasonable
time has been allowed for the real party in interest to ratify,
join, or be substituted."). At this time, however, and under
these circumstances, summary judgment in favor of Defendants on
grounds of the real party in interest/standing will be denied
without prejudice. Anderson, 477 U.S. at 248-50.

### 2. Malignancy Claims

#### a. First Bankruptcy

There is no evidence in the record that Mr. Gaito knew
of his malignancy asbestos claims (or the illness underlying
those claims) at the time he filed the First Bankruptcy
petition. The Court has held that, absent such evidence, Mr.
Gaito was not required to schedule those claims (initially or by
way of amendment). The question then is whether the claims were
nonetheless property of the First Bankruptcy estate by operation
of law, pursuant to the rule of Segal. Specifically, the Court

---

reopen Mr. Gaito's Second Bankruptcy proceedings and move the
Bankruptcy Court to compel abandonment of the non-malignancy
claims.

must determine whether Mr. Gaito's malignancy asbestos claims were sufficiently rooted in the pre-First Bankruptcy past to be property of the First Bankruptcy estate. Id.

Mr. Gaito's malignancy claims are not part of his First Bankruptcy estate for all of the reasons for which his non-malignancy claims were not part of his First Bankruptcy estate; the analysis is the same. In short, because the malignancy cause of action did not accrue until after his First Bankruptcy was filed, and because the pre-First petition asbestos exposure, alone, was not enough to create a malignancy claim (i.e., did not necessarily give rise to a malignant illness), his malignancy claims are not "sufficiently rooted in the pre-[First] bankruptcy past" to render them property of that bankruptcy estate. Segal, 382 U.S. at 380. Instead, the general rule of In re O'Dowd applies, and the First Bankruptcy estate owns only those interests that Mr. Gaito had at the time the First Bankruptcy petition was filed – which did not include his malignancy claims. In re O'Dowd, 233 F.3d at 202; see also 11 U.S.C. § 541(a)(1). Accordingly, with respect to Mr. Gaito's malignancy asbestos claims, Defendants' motion for summary judgment on grounds that are property of the First Bankruptcy estate (because they are sufficiently rooted in the pre-bankruptcy past) is denied. Anderson, 477 U.S. at 248-50.

b.   <u>Second Bankruptcy</u>

There is no evidence in the record that Mr. Gaito knew of his malignancy asbestos claims (or the illness underlying those claims) at the time he filed the Second Bankruptcy petition. The Court has held that, absent such evidence, Mr. Gaito was not required to schedule those claims (initially or by way of amendment). The question then is whether the claims were nonetheless property of the Second Bankruptcy estate by operation of law, pursuant to the rule of <u>Segal</u>. Specifically, the Court must determine whether Mr. Gaito's malignancy asbestos claims were sufficiently rooted in the pre-Second Bankruptcy past to be property of the Second Bankruptcy estate. <u>Id.</u>

Mr. Gaito's malignancy claims are not part of his Second Bankruptcy estate for all of the reasons for which his non-malignancy claims were not part of his First Bankruptcy estate, and for which his malignancy claims were not part of his Second Bankruptcy estate; the analysis is the same. In short, because the malignancy cause of action did not accrue until after his Second Bankruptcy was filed, and because the pre-Second petition asbestos exposure, alone, was not enough to create a malignancy claim (i.e., did not necessarily give rise to a malignant illness), his malignancy claims are not "sufficiently rooted in the pre-[Second] bankruptcy past" to render them property of that bankruptcy estate. <u>Segal</u>, 382 U.S.

at 380. Instead, the general rule of In re O'Dowd applies, and the Second Bankruptcy estate owns only those interests that Mr. Gaito had at the time the Second Bankruptcy petition was filed – which did not include his malignancy claims. In re O'Dowd, 233 F.3d at 202; see also 11 U.S.C. § 541(a)(1). Accordingly, with respect to Mr. Gaito's malignancy asbestos claims, Defendants' motion for summary judgment on grounds that are property of the Second Bankruptcy estate (because they are sufficiently rooted in the pre-bankruptcy past) is denied. Anderson, 477 U.S. at 248-50.

## VI.  CONCLUSION

For all of the reasons stated above, Defendants' motion for summary judgment will be denied.[21]

---

[21]    Defendants' motion for summary judgment on grounds of judicial estoppel will be denied (with respect to all claims).

With respect to Plaintiffs' non-malignancy claims, Defendants' motion for summary judgment on grounds that the bankruptcy trustee is the real party-in-interest with ownership of these claims will be denied without prejudice (pending proof that the Second Bankruptcy trustee has sought to reopen the Second Bankruptcy action and intends to pursue these claims).

With respect to Plaintiffs' malignancy claims, Defendants' motion for summary judgment on grounds that the bankruptcy trustee is the real party-in-interest with ownership of these claims is denied.

49